RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0372p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

RED CARPET STUDIOS DIVISION OF SOURCE
ADVANTAGE, LTD.,

*Plaintiff-Appellee/
Cross-Appellant,*

Nos. 04-4416/4450

*v.*

NEIL SATER d/b/a Wind Wonders by Neil Sater,
*Defendant,*

JOEL D. JOSEPH,

*Appellant/
Cross-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00051—Sandra S. Beckwith, Chief District Judge.

Argued: June 5, 2006

Decided and Filed: October 10, 2006

Before: SILER, DAUGHTREY, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Joel D. Joseph, Bethesda, Maryland, for Appellant. John P. Davis, WOOD, HERRON & EVANS, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Joel D. Joseph, Bethesda, Maryland, for Appellant. John P. Davis, Theodore R. Remaklus, Thomas J. Burger, WOOD, HERRON & EVANS, Cincinnati, Ohio, for Appellee.

---

## OPINION

---

SILER, Circuit Judge. Appellant Joel Joseph, counsel for Defendant Neil Sater, appeals the imposition of sanctions under 28 U.S.C. § 1927. Plaintiff Red Carpet Studios ("Red Carpet") appeals the district court's reduced sanctions award. Because neither party establishes that the district court abused its discretion, we AFFIRM.

**I.**

This appeal arises out of litigation between Sater and Red Carpet for copyright violations. Sater sued Red Carpet for copying his designs for wind sculptures, and the parties entered into a settlement agreement. Sater then learned that Red Carpet potentially breached the settlement agreement and was again marketing wind sculptures which were substantially similar to those that were the subject of the first litigation. After a fruitless exchange of letters, Red Carpet filed suit in the district court for the Southern District of Ohio for a declaratory judgment stating that Red Carpet had not violated Sater's copyrights and was not in breach of the settlement agreement. Shortly thereafter, Sater filed his own action in the Central District of California for breach of copyright, breach of contract, fraud and rescission of the settlement agreement.

Sater's motion to dismiss the declaratory judgment action in Ohio or, alternatively, to transfer the litigation to the Central District of California was denied. The Ohio court enjoined Sater from proceeding in California, and the California court accordingly denied Sater's motion for an injunction and stayed the proceedings. Sater also attempted to substitute Wind Wonders for himself on the basis that the copyrights had been transferred to Wind Wonders, of which Sater was the majority owner. Joseph, who had been listed on the briefs as of counsel, argued on behalf of Sater at the California hearing.

In January 2004, Joseph again attempted to substitute Wind Wonders for Sater in the California action, contending that "Wind Wonders LLC . . . acquired all title and interest to Neil Sater's copyrighted wind sculptures." That day, Joseph filed a motion for a hearing in the California court and moved for it to ignore the Ohio court's injunction on the basis that the latter had abused its discretion. The California court rejected both motions. Joseph then filed a motion in opposition to the stay, again contending that the Ohio court had abused its discretion. However, in response to Red Carpet's contention that Sater lacked standing because of the transfer of the copyrights, Joseph represented that Sater in fact was still the beneficial owner.

Joseph then filed a motion in Ohio for an injunction against Red Carpet. However, he failed to add Wind Wonders as a necessary party. Noting this fact, the district court denied the motion for injunction on the basis that Sater lacked standing. The court also observed that Joseph could not attempt to add a necessary party without proper documentation and so denied Joseph's on-the-spot motion to add Wind Wonders. At the same hearing, the district court enjoined Sater and Joseph from mailing cease-and-desist letters to Red Carpet's customers. The district court agreed with Red Carpet that resolution of the litigation would resolve any issues between Sater and the end users.

Red Carpet later moved for sanctions seeking attorney's fees and costs under 28 U.S.C. § 1927 and pursuant to the court's inherent authority to issue sanctions. The district court granted the request based on Joseph's conduct in mailing the cease-and-desist letters which the district court found constituted harassment; moving for an injunction based on nothing but "bare bones" allegations and then being unprepared at the hearing; and failing to cooperate in scheduling the deposition of Laury Ostrow, whereas, in fact, Ostrow and Joseph had an attorney-client relationship. The district court also ruled that the pleadings filed by Joseph in California were an attempt to disregard the Ohio court's authority and do an end-run around its injunction. The court then awarded $10,000 to Red Carpet, which was substantially less than the amount Red Carpet had requested.

**II.**

Joseph contends that (A) the district court did not have jurisdiction to impose sanctions because the underlying litigation had been settled and the case closed; (B) the sanctions award contravened the terms of the settlement agreement; and (C) the district court abused its discretion

in awarding sanctions.  Red Carpet contends that (D) the district court abused its discretion in reducing the amount of the sanctions.  We review the imposition and amount of sanctions awarded under 28 U.S.C. § 1927 for an abuse of discretion.  *See Runfola and Associates, Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996).  We find none here.

**A.**

Joseph contends that the district court lacked jurisdiction to impose sanctions because the case had settled and been voluntarily dismissed by the time the amount was calculated.  Settlement actually occurred between the grant of sanctions and their final calculation.  However, even had the entire request come after the FED. R. CIV. P. 41(a) motion, the district court would still have had jurisdiction to award sanctions.

Section 1927 is silent as to when sanctions can no longer be imposed.  However, the Supreme Court has consistently held that federal courts retain jurisdiction over issues – such as sanctions – that are collateral to the merits.  In *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990), it rejected the argument that a district court lacked jurisdiction to impose sanctions under FED. R. CIV. P. 11 after the plaintiff had voluntarily dismissed the action.  The Court recognized that

> it is well established that a federal court may consider collateral issues after an action is no longer pending . . . . [L]ike the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action.  Rather it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.  Such a determination may be made after the principal suit has been terminated.

*Id.* at 395-96 (citations omitted).  Collateral issues are "'independent proceedings supplemental to the original proceeding and not a request for a modification of the original decree.'"  *Id.* at 395 (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 170 (1939)).  In *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992), the Court held that even where a federal court lacked subject matter jurisdiction – in that case for lack of a federal question – it nonetheless had jurisdiction to impose Rule 11 sanctions for abuses of the judicial process.  For that reason, the Court dismissed any Article III problem because the matter "does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction."  Similarly, in *White v. N.H. Dep't of Empl. Sec*., 455 U.S. 445, 451 n.13 (1982), the Court observed that jurisdiction to award attorney's fees under 42 U.S.C. § 1988 exists "years after the entry of a judgment on the merits."

We have yet to extend *Hartmarx Corp*. or *Willy* to sanctions imposed under 28 U.S.C. § 1927 or pursuant to a court's inherent authority.  Yet, we find no material difference between the collateral character of sanctions under Rule 11 and sanctions awarded under 28 U.S.C. § 1927 or pursuant to a court's inherent authority.  *Cf. Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999); *Matos v. Richard A. Nellis, Inc*., 101 F.3d 1193, 1196 (7th Cir. 1996); *Bolivar v. Pocklington*, 975 F.2d 28, 31 (1st Cir. 1992).  Like Rule 11 sanctions, neither bears on the merits of a case, and both empower the court to command obedience to the judiciary and to deter and punish those who abuse the judicial process.  Thus, a court's jurisdiction to issue sanctions under 28 U.S.C. § 1927 or pursuant to a court's inherent authority is ever present.[1]

---

[1] The cases Joseph cites in support of his brief are inapposite.  *Webster v. Reprod. Health Servs.*, 492 U.S. 490, 511-13 (1989), narrowly held that a district court did not have jurisdiction over the merits of a case no longer before it.  *Colombrito v. Kelly*, 764 F.2d 122, 133-34 (2d Cir. 1985), merely observed that "When a lawsuit is voluntarily dismissed with prejudice under Fed. R. Civ. P. 41(a)(2), attorneys fees have *almost never* been awarded." (Emphasis added.)

**B.**

Joseph contends that the sanctions motion and order abrogated the Stipulated Dismissal with Prejudice. However, the Stipulated Dismissal states that "Red Carpet agrees to dismiss with prejudice any claims that have been brought or could have been brought in that action." The language "any claims" clearly refers to causes of action and not to collateral issues. In any event, Joseph had already been substituted as counsel and neither signed nor was a party to the Stipulated Dismissal with Prejudice.

**C.**

Joseph lastly contends that his actions were not sanctionable. Red Carpet sought sanctions under both 28 U.S.C. § 1927 and pursuant to the court's inherent authority. Sections 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 sanctions are warranted when an attorney objectively "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Ruben v. Warren City Sch.*, 825 F.2d 977, 984 (6th Cir. 1987). The purpose is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy. *See Jones v. Continental Corp.*, 789 F.2d 1225, 1230-31 (6th Cir. 1986). A sanctioned attorney is thus required to personally satisfy the excess costs attributable to his misconduct. *See In re Ruben*, 825 F.2d 977, 983 (6th Cir. 1987).

Furthermore, *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766-67 (1980), held that federal courts have the inherent power to assess attorney's fees against counsel who willfully abuse judicial processes or who otherwise act in bad faith. However, unlike sanctions imposed under a court's inherent authority, § 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence. *See In Re Rubin*, 825 F.2d at 984; *Jones*, 789 F.2d at 1230 ("we hold that 28 U.S.C. § 1927 authorizes a court to assess fees against an attorney for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety."). Thus, an attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings. *See United States v. Wallace*, 964 F.2d 1214, 1220 (D.C. Cir. 1992) (observing that recklessness is a lower standard than bad faith, requiring "deliberate action in the face of a known risk, the likelihood or impact of which the actor unexcusably [sic] underestimates or ignores.").

Here, we agree with the district court that (1) Joseph's continuous attempts to circumvent the district court's injunction by prosecuting the California case literally and unnecessarily multiplied the proceedings; (2) Joseph's failure to join a necessary party and the several attendant misrepresentations as to the true nature of the transfer of the copyrights was vexatious conduct and rendered the motion frivolous; (3) Joseph's and Sater's cease-and-desist letters were vexatious and harassing because the issues with the recipients would have been resolved through the regular course of litigation; and (4) Joseph's refusal to expedite the deposition of Ostrow needlessly increased the costs of litigation given the relationship they had. Thus, Joseph's actions were taken, at the very least, in the face of an obvious risk that he was increasing the work on the other party without

advancing the litigation. Therefore, based upon the district court's findings, sanctions would have been justified under § 1927, the court's inherent authority, or both. *See Runfola*, 88 F.3d at 368.[2]

Finally, Joseph contends that his right to due process was violated because the hearing on the sanctions was combined with the hearing on the injunction. Sanctions do implicate one's right to notice and a meaningful opportunity to be heard on the record. *See Roadway Express*, 447 U.S. at 752. However, Joseph argued his case in writing and at a hearing, and he makes no argument why the notice and the hearing he received were inadequate.

## D.

Red Carpet contends that the district court erred in reducing the sanctions amount to $10,000. The district court first reduced costs to those it deemed pertinent and not excessive, and arrived at a preliminary figure of $42, 294.10. The court then reduced the amount to $10,000 which it found provided sufficient deterrence and punishment. It cited *Novelty Textile Mills, Inc. v. Stern*, 136 F.R.D. 63, 72 (S.D.N.Y. 1991), for the proposition that the goal of 28 U.S.C. § 1927 was deterrence and punishment rather than restitution. Red Carpet argues that the statute is on its face designed to make a party whole, but cites no law to support its reading or to counter the district court's indication that § 1927 acts as a deterrent. However, we have previously observed that sanctions imposed under § 1927 or pursuant to a court's inherent authority are punitive. *See, e.g., Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1378-1379 (6th Cir. 1987) (observing that § 1927 sanctions are "penal in nature"); *In re Ruben*, 825 F.2d at 981 (observing that courts have the "inherent power to punish bad faith conduct.").

Thus, we find no reason to disturb the district court's decision.

**AFFIRMED.**

---

[2]Though the district court made no express finding of willfulness, bad faith or recklessness, we may nonetheless affirm if "the record sets forth sufficient evidence to support [the district court's] decision." *Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir. 1985).