NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0209n.06
Filed: March 18, 2009

Nos. 07-6504, 07-6505

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CHERYL FOLLOWELL, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant/Cross-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| GEORGE MILLS, JR., | ) | |
| | ) | O P I N I O N |
| Defendant-Appellee/Cross-Appellant. | ) | |

BEFORE:     ROGERS, SUTTON and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**    This action represents a final effort by the personal representative of the estate of a Chapter 11 bankruptcy debtor to avoid liability for pollution remediation costs attributed to the debtor's and her husband's waste-oil refining business operations at two sites in Arkansas. The assertion of a claim for these remediation costs against the debtor's estate by the trustee of the debtor's husband's Chapter 7 bankruptcy estate is said to have constituted a fraud upon the court which warrants setting aside the bankruptcy court's judgment against the debtor. The bankruptcy court dismissed the complaint for failure to state a valid claim, but denied the trustee's motion for sanctions. The district court affirmed the bankruptcy court's judgment in its entirety. The dismissal of the complaint was clearly proper. The reasons for denial of the motion

for sanctions, however, have not been adequately explained, necessitating remand for reconsideration.

## I. BACKGROUND

The fact summary included in the bankruptcy court's opinion represents a fair and accurate statement of the factual and procedural background for its rulings. It is here reproduced in its entirety:

> Cheryl Followell ("Plaintiff"), Betty Jean Gurley's personal representative, alleges that George Mills, Chapter 7 Trustee ("Mills") and his attorney, James Foster ("Foster") committed fraud in filing a proof of claim in the Western District of Tennessee based on a Florida bankruptcy court judgment against Mrs. Gurley. Mills has responded with a motion to dismiss Plaintiff's complaint for failure to state a claim and a motion for Rule 9011 sanctions against Plaintiff and her attorneys, Anthony C. Pietrangelo and John J. Cook.

> This case initially involved two bankruptcy proceedings, one in Florida and one in Tennessee. William and Betty Gurley, a married couple, maintained residences in Tennessee and Florida and operated businesses in numerous states including Tennessee, Nevada and Arkansas. In 1987, the United States, through its agent, the Environmental Protection Agency ("EPA"), sued Mr. Gurley, Mrs. Gurley, and their son to recoup past and anticipated clean-up or remediation costs incurred at two Arkansas Superfund sites controlled by the Gurley Refining Company, Inc., the Gurley family business. In 1990, the EPA dismissed Mrs. Gurley from the civil action. It was at this time that Mr. Gurley commenced a series of transactions that purported to transfer his assets to Mrs. Gurley.

> In 1992, the United States District Court for the Eastern District of Arkansas entered a judgment in favor of the EPA, holding Mr. Gurley liable for past clean-up costs in connection with Gurley Refining Company, Inc., at a facility located in Edmonson, Arkansas, in the amount of $1.7 million plus future costs. *United States v. Gurley Refining Co., Inc.*, 788 F. Supp. 1473 (E.D. Ark. 1992); *aff'd in relevant part* 43 F.3d 1188 (8th Cir. 1994). The EPA also asserted claims against William Gurley in connection with another site located at 1000 South Eighth Street in West Memphis, Arkansas.

As a result of the EPA claims, Mr. Gurley filed a chapter 7 bankruptcy petition in the Middle District of Florida on July 26, 1995. The EPA was the sole creditor of Mr. Gurley's bankruptcy estate. The EPA filed a proof of claim asserting that Mr. Gurley owed the United States roughly $25,000,000 in alleged environmental clean-up costs incurred in connection with the Edmonson and South Eighth Street sites. Mills, the chapter 7 trustee, filed a complaint against Mrs. Gurley to recover assets alleged to have been fraudulently transferred by Mr. Gurley to her.

Following lengthy negotiations, on August 30, 1996, Mills and Mrs. Gurley entered into a proposed settlement agreement ("Settlement Agreement") whereby Mrs. Gurley agreed to pay the bankruptcy estate $1,000,000 in exchange for a general release from all causes of action against her. The Settlement Agreement also provided that Mills and Foster would "take all appropriate action to obtain approval of the settlement from the bankruptcy court." Pursuant to the Rules of Bankruptcy Procedure, Mills filed a motion to approve the settlement. After filing the motion, however, Mills discovered that additional assets had been transferred to Mrs. Gurley. These consisted of real property located in Nevada that contained deposits of diatomaceous earth (i.e., clay), a material used by the Moltan Company, a company controlled by the Gurleys, in the production of kitty litter and other products. Mr. Gurley told Mills that the land was worth about $22,000. An expert for the EPA valued the land at over $1,000,000. Based upon this information, Mills asked that the hearing to approve the settlement agreement be continued to give him time to investigate the value of the Nevada property. Mills retained an independent expert who also valued the land at over $1,000,000. As a result, Mills withdrew his motion for approval of the Settlement Agreement at a hearing before the Florida bankruptcy court. Attorneys for the Gurleys were present at that hearing. Mills' claims against Mrs. Gurley proceeded to trial.

On June 12, 1997, after eight days of trial, the Florida bankruptcy court entered a judgment in part in favor of Mills and in part in favor of Mrs. Gurley. The court essentially ruled that all assets transferred by Mr. Gurley to Mrs. Gurley were property of Mr. Gurley's bankruptcy estate. Mrs. Gurley appealed this judgment to the United States District Court in Orlando, Florida. The Orlando District Court affirmed the bankruptcy court's decision. Mrs. Gurley then appealed to the Eleventh Circuit Court of Appeals, which also affirmed the bankruptcy court's decision. Mrs. Gurley then sought certiorari review before the United States Supreme Court. Her petition was denied.

Following the entry of judgment against her, Mrs. Gurley filed her own Chapter 11 bankruptcy case in the Bankruptcy Court for the Western District of Tennessee. Mills filed a proof of claim in Mrs. Gurley's case based upon the Florida

bankruptcy court's judgment. After a lengthy hearing, this court allowed and valued the claim at $22,000,000. The claim was paid pursuant to Mrs. Gurley's confirmed Plan of Reorganization. Mrs. Gurley's chapter 11 bankruptcy case was closed February 11, 2000. Mrs. Gurley died in 2003. Plaintiff, Mrs. Gurley's daughter and personal representative, moved to have the case reopened on February 6, 2004. On May 6, 2004, Plaintiff brought this adversary proceeding against Mills to recover the $22,000,000 that Mrs. Gurley paid to Mr. Gurley's bankruptcy estate as a result of Mills' proof of claim.

Plaintiff alleges that Mills and his attorney, Foster, committed fraud upon the Florida court in withdrawing their motion to approve the Settlement Agreement and forcing a trial. Further fraud occurred, according to Plaintiff, when Mills filed his proof of claim in this court without mentioning the Settlement Agreement. Plaintiff claims that, but for Mills' and Foster's deceit, there would have been no trial and thus, no $22,000,000 claim against Mrs. Gurley. Plaintiff seeks to vacate this court's prior judgment allowing Mills' claim and award Plaintiff damages in an amount not less than $22,000,000. Plaintiff also requests a jury trial. Mills has responded with a motion to dismiss the complaint for failure to state a claim and a motion for Federal Bankruptcy Rule 9011 sanctions and fees pursuant to 28 U.S.C. § 1927. Because Mills' motion to dismiss should be granted, the only motions for this Court to consider are Mills' motion to dismiss and Mills' motion for sanctions.

Bankr. ct. op., March 2, 2007, pp. 2-6, JA 983-87.

As it proceeded to evaluate plaintiff Followell's complaint under Fed. R. Civ. P. 12(b)(6), the bankruptcy court recognized that plaintiff's claim that the $22 million judgment against Mrs. Gurley's estate was procured by fraud represented a *potentially* suitable means of obtaining relief from the judgment. Yet, the court remained unpersuaded that plaintiff's allegations made out a claim for fraud upon the Tennessee bankruptcy court. That is, the court concluded that Mills's alleged failure to disclose the failed settlement agreement as he asserted the $22 million judgment claim against Mrs. Gurley's estate, did not evidence "fraud" because Mills was under no duty to disclose the settlement agreement. There was no duty to disclose, the court concluded, because the settlement agreement (a) had never been approved in the Florida bankruptcy court (Mr. Gurley's bankruptcy

case), (b) had therefore never become binding, and (c) did not therefore, by its existence, in preliminary unapproved form, impugn the integrity of the Florida bankruptcy court judgment. In assessing Followell's allegations that the Florida bankruptcy court judgment had been procured by fraud and that Mills knew it, the court concluded that Mills's alleged misconduct, even if accepted as true, did not result in any deception of the bankruptcy court or corruption of its judgment. Hence, irrespective of the alleged wrongfulness of Mills's conduct and its impact on Mrs. Gurley's estate, the asserted action to set aside the judgment based on the theory of fraud upon the court was held not to make out a claim upon which relief could be granted.

In denying Mills's motion for sanctions, the bankruptcy court held that although the complaint failed to state a legally sufficient claim, its facial validity presented a "close question," a claim that was "not frivolous." Inasmuch as this was the first time a claim for relief had been presented based on the theory of fraud upon the court, the court held it did not represent a vexatious multiplication of proceedings.

On appeal, the district court affirmed, similarly concluding that Followell had failed to identify any representations by Mills that were intentionally false or made with reckless disregard for the truth by which either bankruptcy court was deceived. Applying deferential review, the district court further found that the bankruptcy court's denial of sanctions was not an abuse of discretion.

On appeal to this court, Followell insists that her complaint, viewed in the light most favorable to her, contains sufficient allegations of fraudulent conduct by Mills, conduct that was directed at the bankruptcy court, and conduct that succeeded in deceiving the court. In his cross-appeal, Mills contends the bankruptcy court's denial of sanctions represents an abuse of discretion

because the record clearly shows that Followell has made shocking and scandalous allegations without factual support and without even making a reasonable investigation.

## II. ANALYSIS

### A. Fraud on the Court

#### 1. *Standard of Review*

In reviewing a district court's decision on appeal from the bankruptcy court, this court accords no deference to the district court's decision, but reviews the bankruptcy court's findings of fact for clear error and reviews conclusions of law de novo. *In re Cook*, 457 F.3d 561, 565 (6th Cir. 2006). Whether the bankruptcy court properly dismissed the complaint pursuant to Rule 12(b)(6) is a question of law subject to de novo review. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). The reviewing court must construe the complaint in a light most favorable to the plaintiff, accept all well-pled factual allegations as true, and determine whether the plaintiff undoubtedly could prove no set of facts in support of those allegations that would entitle him or her to relief. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Yet, to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov*, 411 F.3d at 716. Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id. See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007) (explaining that complaint must contain something more than a statement of facts that merely creates speculation or suspicion of a legally cognizable cause of action).

### 2. *Power to Vacate Judgment*

The Tennessee bankruptcy court recognized that it had the power to vacate its earlier

judgment against Mrs. Gurley's estate upon a sufficient showing that the judgment had been obtained

by fraud, citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944); *Workman*

*v. Bell*, 245 F.3d 849, 852 (6th Cir. 2001).[1]  Yet, the power is exercised only with great caution,

reserved for occasions where enforcement of the judgment is "manifestly unconscionable." *Hazel-*

*Atlas*, 322 U.S. at 244-45.

The fraudulent conduct that Followell complains of is Mills's assertion of the $22 million

claim based on a judgment he knew to have been fraudulently obtained in the Florida bankruptcy

court.  The Florida bankruptcy court judgment is said to have been fraudulently obtained insofar as

Mills knew the matter of Mrs. Gurley's liability to Mr. Gurley's estate had been settled prior to trial

---

[1]Ordinarily, Followell would be expected to seek this fraud-on-the-court relief first in the Florida bankruptcy court, where the alleged fraud first took place. *See Weisman v. Charles E. Smith Mgmt., Inc.*, 829 F.2d 511, 513 (4th Cir. 1987) ("[T]he proper forum in which to assert that a party has perpetrated a 'fraud on the court' is the court which allegedly was a victim of that fraud.").  If and when the Florida bankruptcy court judgment were vacated, then, Followell could legitimately move for similar relief in the Tennessee bankruptcy court.

However, a bankruptcy court has broad equitable powers to inquire into the validity of any claim against the estate—even one reduced to judgment—and to disallow the claim if it is ascertained to have been unlawfully obtained. *Heiser v. Woodruff*, 327 U.S. 726, 736 (1946); *Pepper v. Litton*, 308 U.S. 295, 305 (1939); *In re: XYZ Options, Inc.*, 154 F.3d 1262, 1267-71 (11th Cir. 1998).  Hence, although the Tennessee bankruptcy court did not have jurisdiction to vacate the Florida bankruptcy court judgment because it was procured by fraud, it did have jurisdiction to inquire into the validity of the $22 million claim that formed the basis for its own prior judgment and, if that claim were found to have been corrupted by fraud, could have vacated its own judgment based on its retroactive refusal to allow the claim.

for a mere $1 million. In other words, the fraud-on-the-court showing needed to obtain relief in this action in the Tennessee bankruptcy court is entirely derivative of and dependent on the showing of the initial fraud-on-the-court in the Florida bankruptcy court. If the Florida bankruptcy court judgment was valid and enforceable, notwithstanding the pretrial settlement that undisputedly never quite received the required court-approval, Mills's assertion of it in the Tennessee bankruptcy court action can hardly have been fraudulent.

By all appearances, the Florida bankruptcy court judgment was and is valid and enforceable. Indeed, despite Mrs. Gurley's exhaustion of her appellate remedies, including even a petition for certiorari to the U.S. Supreme Court, the Florida bankruptcy court judgment withstood every challenge. It is well-settled that a judgment rendered in a court of competent jurisdiction is presumed valid until proven otherwise. *Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co.*, 137 F.2d 871, 879 (6th Cir. 1943). To demonstrate that the judgment should be set aside for fraud on the court, Followell must present clear and convincing evidence. *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th Cir. 2007).

### 3. *Sufficiency of Allegations*

To make out a facially valid claim that the judgment was procured by fraud upon the court, it is incumbent on Followell to allege (1) conduct, (2) on the part of an officer of the court, (3) directed to the "judicial machinery" itself, (4) that was intentionally false or undertaken with either wilful blindness to, or reckless disregard for, the truth; (5) that was either in the nature of a positive averment or a concealment under circumstances that gave rise to duty to disclose; and (6) that deceived the court. *Workman*, 245 F.3d at 852, citing *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th

Cir. 1993). Further, because of the need for finality of judgments, the deceit is deemed sufficiently serious to warrant upsetting an otherwise settled judgment only if it "actually subvert[ed] the judicial process" by preventing the judicial machinery from performing in the usual manner to impartially adjudge the case presented. *Demjanjuk*, 10 F.3d at 352.

There is no real dispute in relation to whether Followell's fraud-on-the-court claim satisfies the first few required elements of such a claim. The allegations clearly relate to conduct by an officer of the court directed at the judicial machinery. The bankruptcy court correctly recognized that the facial validity of Followell's claim ultimately depends on allegations that Mills had engaged in conduct in the Florida bankruptcy court that was intentionally false or undertaken with reckless disregard for whether it was true; that amounted to either a positive averment or a concealment where there was a duty to disclose; and that deceived the court. The court also correctly distilled the relevant allegations into the claim that Mills had withdrawn his support for the motion to approve the settlement for a stated reason (that two experts had estimated the value of late-transferred Nevada mineral claims at more than $1 million) that was not the real reason (that Mills used the experts' estimates as a pretext, to legitimize continuing efforts to obtain a better result for the bankruptcy estate even though he had reason to believe the experts' estimates were unrealistically high). Yet, the court cited two reasons for its conclusion that any alleged falsity in Mills's stated reason for withdrawal of support did not operate to deceive the Florida bankruptcy court: (1) there is no allegation that Mills misrepresented the contents of or bases for the experts' opinions; and (2) the Florida bankruptcy court simply denied the motion to approve the settlement as moot because withdrawn, irrespective of the reason for Mills's withdrawal of support for the motion. In other

words, the court concluded Followell failed to state a valid claim for fraud upon the court because she did not allege that the court was in any way defrauded. The court acknowledged that Followell may be aggrieved by Mills's failure to support the settlement agreement, but recognized that Mills's duty as trustee was to act in the best interests of the bankruptcy estate and its creditors.

In its opinion affirming the order of dismissal, the district court reached the same conclusion, finding the complaint devoid of allegations of fraudulent conduct by Mills that actually deceived the Florida bankruptcy court. On appeal, Followell continues to insist that Mills was aware of information that must have led him to question the reliability of the opinions of the two experts who had valued the Nevada mining claims at over $1 million—information which he did not, however, disclose to the Florida bankruptcy court at the time he withdrew the motion to approve the settlement agreement. In others words, the fraud-on-the-court claim is premised not on any affirmative misrepresentation, but on the theory that Mills failed to disclose information he was duty-bound to disclose to the bankruptcy court, which nondisclosure allegedly operated to mislead or deceive the court.

The relevant circumstances surrounding the withdrawal of the motion to approve the settlement agreement deserve a closer look. They are evident from exhibits attached to Followell's second amended complaint and are therefore properly considered on Rule 12(b)(6) review. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). On October 9, 1996, Trustee Mills filed his motion to approve the $1 million settlement agreement reached in mediation between the trustee and Mrs. Gurley. The motion includes mention of the post-mediation discovery of two 1992 transfers of real property from Mr. Gurley to Mrs. Gurley, relating to the Nevada mining claims, but

characterized the value of the property as "negligible." The motion also informed the bankruptcy court of the objection of the EPA, as judgment creditor, to the proposed settlement.

A hearing on the motion to approve settlement was set for October 28, 1996. At the hearing, Mills advised the court that the EPA's expert Keith Papke had, in a telephone deposition just days before the hearing, estimated the Nevada mining claims' value at $1.4 million. Mills explained that Papke's opinion was "subject to some criticism," but that his duty of due diligence required him to make further investigation of the property's value to ensure that the proposed settlement still represented a fair compromise. The court granted the request to continue the hearing, setting a status conference for November 20, 1996.

At the November 20 status conference, Mills advised that he had located an expert who would assist in valuing the Nevada mining claims, Dr. Mitchell Albert. The court granted a further continuance to allow Dr. Albert to complete his assessment. On December 18, 1996, Mills reported that Albert had reviewed all the materials and concluded that Papke's opinion, if anything, was low. Accordingly, based on this late-uncovered evidence of a potentially voidable transfer of property to Mrs. Gurley valued by two experts at more than $1 million, Mills was constrained to withdraw his support for the proposed $1 million settlement—a settlement he had earlier supported on the apparently erroneous belief that the Nevada property was of negligible value. Mills proposed that the new information counseled in favor of re-opening mediation and, in case further negotiations proved unsuccessful, placing the case on the trial docket.

Counsel for Mrs. Gurley was unenthusiastic about the prospects of further mediation, but agreed to participate if directed by the court and if the government paid for it. Counsel for Mr.

Gurley stated his opinion that the new property value information was erroneous, but acknowledged that the trustee "has to do what he has to do" and urged the court to set the case for trial. When counsel for the EPA took issue with Mr. Gurley's counsel's characterization of the new information, the court made it clear that it had no interest in hearing more about the value of the property. The court directed counsel for the trustee to prepare an order denying the motion to approve the settlement as withdrawn and therefore moot. The court also directed the parties to renew their mediation efforts, with anticipation of trial in February or March 1997.[2]

Again, there is no allegation that Mills, personally or through counsel, made any affirmative misrepresentation during the December 18 hearing. There is no allegation that he misrepresented the nature or conclusiveness of either expert's opinion. Mills did not, personally or through counsel, express any opinion about the accuracy or integrity of either expert's opinion. Mills simply reported to the court what was indisputably true: the two experts who had been retained to formulate opinions on the value of the Nevada mineral claims, one by the EPA and one by the trustee, arrived at estimated values that caused him to withdraw his support for the earlier reached settlement agreement, because it no longer appeared to be in the best interests of Mr. Gurley's estate and its creditors. After Mills advised the court that he was reluctantly constrained to withdraw the motion, the court expressed no interest in the value of the property. Neither counsel for Mr. Gurley nor

---

[2]Although the record does not clearly disclose what happened next, it appears the parties did engage in further mediation efforts. It also appears the parties contemporaneously engaged in discovery in preparation for possible trial. As Mills took inventory of the fruits of discovery, his assessment of his likelihood of success in trial improved. Apparently, his settlement demand rose to a level that led to a negotiating impasse and eventual trial.

counsel for Mrs. Gurley objected to withdrawal of the motion to approve settlement and neither

objected to the court's denial of the motion and referral of the matter back to mediation. On this

record, the court's denial of the withdrawn motion was a mere formality; it was not premised on any

misconception about the integrity of the experts' opinions or the actual value of the property.

Followell has alleged and argues that Mills was aware of other "comparable sales

information" that cast doubt on the reliability of the experts' opinions. She argues that Mills had a

duty to disclose this information to the court when he withdrew his motion to approve the settlement.

Mills's failure to disclose this information represents the gravamen of the fraud-on-the-court claim.

It is a theory which not only lacks legal authority, but proceeds from a fundamental misconception

of the trustee's role in the bankruptcy proceedings.

Again, Mills's duty was to act in the best interests of Mr. Gurley's estate and its creditors,

not necessarily in Mrs. Gurley's best interests. *See* 11 U.S.C. § 704. Mills was undisputedly

fulfilling this duty in each of the following actions:

> (1) he participated in mediation and reached a settlement agreement with Mrs. Gurley in the Fall of 1996;
>
> (2) he moved the bankruptcy court to approve the settlement despite the late discovery of the potentially voidable transfer of the Nevada mining claims believed to be of negligible worth, i.e., approximately $22,000;
>
> (3) in the face of the EPA's objection to the proposed settlement agreement, he requested additional time to evaluate the opinion of the EPA's recently deposed expert, Keith Papke, who concluded the mining claims were worth as much as $1.4 million;
>
> (4) he retained an independent expert, Mitchell Albert, to evaluate Papke's opinion and independently assess the value of the mining claims;

(5) he obtained a further continuance from the bankruptcy court to enable Albert to complete his evaluation;

(6) he reported to the bankruptcy court that Albert's opinion was consistent with Papke's, leading him to conclude that the settlement agreement reached prior to disclosure of the voidable mining claims transfer was not in the best interests of the estate after all; and

(7) he withdrew his motion to approve the settlement agreement in favor of re-opened mediation negotiations that could take the value of the mining claims into account.

Even assuming the truthfulness of the allegation that Mills had knowledge of other information calling the experts' opinions into question, his conclusion, in service of the best interests of the estate and its creditors, that the two experts' opinions actually before the court warranted withdrawal and re-evaluation of the settlement was unquestionably appropriate. Mr. and Mrs. Gurley's attorneys conceded as much as they refrained from objecting to the withdrawal of the settlement. If there were some obscure reason to insist on approval of the settlement despite the questions raised by the newly developed evidence, it was surely incumbent on Mr. or Mrs. Gurley's attorney to raise it. Yet, despite having been given the opportunity to do so, neither objected to withdrawal of the settlement. Hence, the bankruptcy court denied the motion to approve the settlement, not in reliance on either expert's valuation of the property, and not in reliance on any implied belief Mills may have had about the property's value, but simply because the motion had been withdrawn and was moot. The notion that Mills, under these circumstances, had a duty to disclose his qualms about the experts' opinions, and that his failure to disclose amounted to "concealment" tantamount to fraud, is not supported by law or reason. Further, the vacuousness of the notion is evident in the exhibits attached to the second amended complaint.

Not only do the facts alleged fail to make out a claim against Mills for fraudulent concealment, but they also fail to identify how the bankruptcy court was misled or deceived by Mills's nondisclosure of his supposed personal misgivings about the experts' opinions. Followell alleges that but for Mills's deceit, the proposed settlement would have been approved and she would have, for a mere $1 million, avoided liability for the eventual $22 million judgment. Yet, this is pure speculation, not a factual allegation of what the bankruptcy court actually *did* in misled reliance on Mills's fraudulent concealment.

Again, the alleged deceit consists of Mills's nondisclosure of his personal apprehensions about the experts' opinions. The claim is *not* that Mills misled the court by withdrawing the motion to approve settlement. For the reasons set forth above, withdrawal of the motion was based on patently and undisputedly appropriate grounds.[3] And the unobjected-to withdrawal of the motion was the sole reason for the bankruptcy court's denial of the motion and referral of the case to continued mediation. Careful review of the December 18, 1996 hearing transcript reveals no reason to believe the bankruptcy court acted as it did because Mills did not mention his alleged personal misgivings about the experts' opinions.[4]

---

[3]In fact, Mills might very well have been in violation of his duties as trustee if he had not withdrawn his support for the motion in the face of two experts' opinions strongly suggesting that the settlement was not in the best interests of the estate.

[4]To the contrary, the hearing transcript supports just the opposite conclusion. If Mills, after withdrawing his support for the motion, had tried to explain that he was not convinced the experts' opinions were necessarily conclusive, it is likely the bankruptcy court would have cut him off, as it had cut off other counsel who were inclined to quibble over the value of the land. Once Mills had withdrawn support for the settlement, the bankruptcy court was not interested in further fact-finding or argument regarding the value of the land. At that point, denial of the motion to approve the

Moreover, it bears emphasizing that the bankruptcy court did not, upon denying the motion to approve settlement as moot, immediately enter the $22 million judgment against Mrs. Gurley. The court merely referred the case back to mediation and added it to the trial docket in case the parties' negotiations failed to bear fruit. In taking such actions, the bankruptcy court was not misled or deceived. The judicial process cannot be said to have been subverted such that the court was prevented from impartially judging the case presented. And even after the motion to approve the settlement was denied as moot, Mrs. Gurley retained a certain measure of control over her own destiny. She had the prerogative to challenge the experts' opinions and negotiate a new settlement in mediation and, if need be, in trial. In other words, it is clear on the face of the complaint and attached exhibits that the bankruptcy court took no action in misled reliance on Mills's alleged nondisclosure of information that resulted in prejudice to any of Mrs. Gurley's substantial rights.

In sum, when the allegations of the fraud-on-the-court claim are measured under the controlling standards—stemming from both the rules of pleading and the substantive law—and are read in light of the attached hearing transcripts, it is abundantly clear that the bankruptcy court did not err in dismissing the claim for failure to state a claim on which relief can be granted. Even if the factual allegations of Count I of the second amended complaint were proven, they would not satisfy the essential elements of a fraud-on-the-court claim requiring a fraudulent averment or concealment that operated to deceive the Florida bankruptcy court and subvert the judicial process.

---

settlement was a foregone conclusion. The court then focused on scheduling the next steps in managing the litigation. Any outstanding controversy between the parties on the actual value of the land would be taken up in mediation and, if need be, in trial.

Since Followell's action for relief from the Tennessee bankruptcy court judgment was premised and necessarily dependent on her claim that the Florida bankruptcy court judgment had been procured by fraud, the facial meritlessness of the claim of fraud in Florida necessarily and fatally undermined her claim of fraud in Tennessee. The fraud-on-the-court claim was therefore properly dismissed for the reasons stated by the bankruptcy court.

## B. Sanctions

### 1. *Standard of Review*

Although the bankruptcy court found the fraud-on-the-court claim to be facially meritless, it did not find Followell's complaint to be frivolous or vexatious and therefore denied Mills's motion for sanctions. Again, we review the district court's ruling on appeal from the bankruptcy court without deference to the district court. The bankruptcy court's denial of Mills's motion for sanctions, under both Bankr. R. 9011 and 28 U.S.C. § 1927, is reviewed for abuse of discretion. *Michigan Division-Monument Builders of N. Am. v. Michigan Cemetery Ass'n*, 524 F.3d 726, 739 (6th Cir. 2008). An abuse of discretion is established when the reviewing court is left with a definite and firm conviction that the lower court committed a clear error of judgment. *Id.* "Such an error occurs 'when the [lower] court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Id*. (quoting *Geier v. Sunquist*, 372 F.3d 784, 789-90 (6th Cir. 2004)).

By signing and filing the second amended complaint, Followell's counsel certified, pursuant to Rule 9011(b) in relevant part, that, to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,"

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

Bankr. R. 9011(b). A violation of any of these requirements is subject to an appropriate sanction, in the discretion of the court. Bankr. R. 9011(c). The test for imposition of sanctions under this rule is whether the individual attorney's conduct was reasonable under the circumstances. *Michigan Monument-Division*, 524 F.3d at 739. A good faith belief in the merits of a case is not necessarily sufficient to avoid sanctions. *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003).

Under 28 U.S.C. § 1927, an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" may be sanctioned by the court. Such sanctions are warranted when an attorney objectively "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)). The purpose of sanctions under § 1927 is "to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios*, 465 F.3d at 646. Section 1927 sanctions "require a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Id.* "Thus, an attorney is sanctionable

when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Id.*

### 2. *Abuse of Discretion?*

The bankruptcy court cited two reasons for its denial of Mills's motion for sanctions. First, because the case was dismissed at the pleading stage, before Followell's counsel had the opportunity to conduct discovery and determine whether the "severe" factual allegations were well-grounded in fact, the court was "hesitant to impose sanctions." Second, though it had found the allegations legally insufficient, the court refused to characterize the complaint as frivolous or as having been filed for an improper purpose. Rather, the court characterized the dismissal as turning on a "close question."

Cognizant of the deferential nature of abuse-of-discretion review, we question whether the bankruptcy court has given Followell's counsel undeserved benefit of the doubt here. The bankruptcy court's analysis of the deficiencies in Followell's fraud-on-the-court allegations does not convey the impression of a judge wrestling mightily with a close question. The reasoning is stated in a clear, logical, and matter-of-fact manner. The bankruptcy court wisely paid little heed to Followell's attorney's obfuscating arguments, but focused on the essential elements of the claim and succinctly explained why the allegations did not measure up. The reasoning is straightforward and sensible. Why the court later characterized the facial sufficiency of the allegations as posing a close question is unclear. Yet, because the sufficiency of the fraud-on-the-court allegations was deemed to pose a "close question," the bankruptcy court accepted the notion that their legal insufficiency might not have been immediately evident to Followell or her attorneys.

This may be too forgiving. Followell was not proceeding *pro se*, and her attorney certainly had a pre-filing duty to make reasonable inquiry of the facts and the law. A reasonable, objective review of the hearing transcripts relating to the withdrawal of the motion to approve settlement, which were all readily available to counsel and even attached to the first amended complaint, unavoidably discloses strong reasons to doubt the merits of the very fraud-on-the-court claim which the complaint asserts. Such an objective review should at least have put counsel on notice of the need to conduct further inquiry before filing the complaint. The filing of a patently groundless complaint is not to be lightly condoned as consonant with the obligations of reasonable legal advocacy.

The suggestion that Followell's pleading deficiencies may be excused for lack of a full opportunity to conduct discovery is similarly unpersuasive. As the above analysis makes clear, and the bankruptcy court manifestly deduced, the exhibits attached to the complaint demonstrate on their face that no amount of discovery could have cured the fundamental flaws in Followell's fraud-on-the-court allegations. The bankruptcy court properly and succinctly concluded that the factual allegations were "legally insufficient." Yet, Followell's counsel was and is undaunted by what the exhibits show. He stubbornly maintains there is factual support for the allegations that Mills had reason to believe the mining claims were actually worth less than the experts opined and yet did not disclose this belief to the Florida bankruptcy court when he withdrew his support for the settlement agreement.

As explained above, Mills, as trustee charged with responsibility to act in the best interests of the bankruptcy estate, and faced with not just one, but two unopposed expert opinions indicating

the proposed settlement agreement was too low, was all but required to withdraw support for the settlement and request re-opening of negotiations. Followell, however, is still unable to admit the reasonableness of Mills's actions. Ten years later, she remains aggrieved by the unfavorable resolution of her mother's interests. Thus, in what appears to be a desperate attempt to rectify the perceived wrong, she has resorted to exaggerated, sensationalized and even scandalous allegations of official wrongdoing. More to the point, her attorney, who is an officer of the court, as well as an advocate, submitted these overblown allegations to the court in the form of pleadings.

Ignoring Mills's legal duty to act in the best interests of the estate and its creditors, Followell's attorney has characterized Mills's withdrawal of support for the settlement as motivated by a design to "extort" a higher settlement amount from Mrs. Gurley and therefore a higher fee for himself. Second amended complaint, ¶¶ 15, 104, JA 50, 71. He has characterized the nondisclosure of Mills's alleged personal opinion as an intentional withholding of information and a misrepresenting of the facts, *id.* at ¶¶ 16, 101, JA 50, 66, in furtherance of a "charade" to "fabricate evidence," *id.* at ¶¶ 24, JA 51, whereby Mills "misled," "defrauded," and exercised "improper influence" over the bankruptcy court, *id.* at ¶¶ 21, 30, 40, 108, JA 51, 52, 53, 71. Further, these allegations have cast aspersions on the integrity of the Florida bankruptcy court and of the judicial process itself, alleging that Mills "hood-winked the Judge," "contaminat[ed] the approval process . . . for personal gain," and "mock[ed] the integrity of our judicial system." *Id.* at ¶¶ 168, 170, 172, JA 84-89.

We understand that sanctions should not be employed to "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Tahfs*, 316 F.3d at 595 (quoting *McGhee v. Sanilac*

*County*, 934 F.2d 89, 92 (6th Cir. 1991)). However, the allegations in Followell's pleadings go beyond the pale of zealous advocacy. *See Red Carpet Studios*, 465 F.3d at 646 (sanctions may be employed to punish aggressive tactics that far exceed zealous advocacy). Mills rightly contends that these allegations are scandalous and recklessly made. They impugn Mills's integrity and reputation and cast the judicial process itself into disrepute. Yet, they all stem from proceedings conducted on the record in the bankruptcy court, and the transcripts of those proceedings not only do not bear out the allegations, but actually refute them. Although it is conceivable that discovery may have revealed additional facts bearing on the claims, there is no apparent reason to believe the fatal flaws in the fraud-on-the-court claim could ever be cured. The fact that Followell is not presently able to identify substantial factual support for her suspicions and accusations strongly suggests her attorney did not conduct the sort of reasonable pre-filing inquiry that is prerequisite to the assertion of such serious, even libelous allegations against an officer of the court. Further, Followell's counsel's conduct appears to be all the more blameworthy in that he reasserted the most egregious allegations in the second amended complaint even after the lack of factual support for them had been exposed by the bankruptcy court in proceedings attacking the first amended complaint.

The present record may not evidence bad faith on the part of Followell's counsel, but such a showing is not prerequisite to an award of sanctions under either Rule 9011 or § 1927. *Red Carpet Studios*, 465 F.3d at 646. On the other hand, the identified pleading excesses can hardly be attributed to mere negligence or incompetence. *See id.* Rather, they reflect the sort of shrewd but reckless lawyering that courts must be vigilant to admonish, correct, and deter through sanctions. *See In re Pioneer Inv. Servs. Co.*, 21 F.3d 428, 1994 WL 134683 at *9 (6th Cir. Apr. 14, 1994) (unpublished)

(observing that stubbornness may deserve sanctions, as well as scandalous charges made against courts and counsel without substantiating evidence).

The bankruptcy court appears not to have been vigilant in this regard. Still, considering the bankruptcy court's greater familiarity with the litigation, and the parties and their lawyers, we are loath to find that the court abused its discretion. Instead, we hold that the bankruptcy court's stated reasons for denial of sanctions are inadequate to ascertain their soundness, warranting remand for reconsideration. *See Michigan Division-Monument*, 524 F.3d at 740 (vacating denial of sanctions for lack of adequate explanation and remanding for "analysis and discrete findings"); *Morross Ltd. Partnership v. Fleckenstein Capital, Inc.*, 466 F.3d 508, 520 (6th Cir. 2006) (district court deemed "remiss" in not providing adequate explanation for denying sanctions).

We therefore reverse the district court's order affirming the denial of sanctions, vacate the bankruptcy court's order denying the motion for sanctions, and remand the matter of sanctions to the bankruptcy court for reconsideration, with instructions to undertake a more thorough scrutiny and make more explicit findings regarding the appropriateness of sanctions in light of the foregoing analysis.

## III. CONCLUSION

Accordingly, the district court's judgment affirming the bankruptcy court's dismissal of the complaint is **AFFIRMED**. However, the affirmance of the bankruptcy court's denial of sanctions is **REVERSED**, the order denying the motion for sanctions is **VACATED**, and the case is **REMANDED** for reconsideration of the motion for sanctions by the bankruptcy court.