**U.S. ELECTRICAL MOTORS, A DIVISION OF EMERSON ELECTRIC CO., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 82–1422, 82–1568.

United States Court of Appeals, Sixth Circuit.

Argued June 15, 1983.

Decided Dec. 9, 1983.

Arnold E. Perl, Richard M. Kobdish, Jr. (argued), Young & Perl, Memphis, Tenn., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Clifford Sethness (argued), National Labor Relations Board, Washington, D.C., for respondent.

Before KEITH and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.

PER CURIAM.

U.S. Electrical Motors (the Company) petitions for review of an order of the National Labor Relations Board (NLRB), which found the Company had committed unfair labor practices during an election campaign conducted by the International Association of Machinists and Aerospace Workers (the Union) at the Company's Mena, Arkansas, plant. The NLRB set aside the results of the election in which the Union was narrowly defeated and ordered a second election. The NLRB cross-petitions for enforcement of that part of its order which requires the Company to cease and desist from prohibited unfair labor practices and to post a prescribed notice to employees on the premises.[1]

This appeal presents important questions on the review of Board orders in the United States Courts of Appeals. They include the following:

1) Whether the United States Court of Appeals for the Sixth Circuit may review a Board decision concerning events transpiring in Arkansas (Eighth Circuit), where the petition for review is brought by a Company headquartered in Connecticut (Second Circuit), and there is no proof in the record that the Company transacts business within the Sixth Circuit.

2) Whether, assuming this Court has jurisdiction to consider such a petition, venue is properly in another Circuit.

3) Whether the Court has jurisdiction to review the order of the Board setting aside the contested election, and ordering a new election.

4) Whether the Board's finding of unfair labor practices is supported by substantial evidence.

We assume jurisdiction in this case under a broad reading of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(f), with some reservation. We would ordinarily have transferred the case to a more appropriate venue, the Eighth Circuit, were it not

---

1. The Board contends that its election order is    not reviewable.

for the consent by the Board to our considering the case and the oral representation by counsel for both parties that the Company did business in this Circuit during the applicable period. We hold that we have no jurisdiction to review that part of the Board's order relating to the representation proceeding since an election order is not a "final order" within the meaning of the Act, 29 U.S.C. § 160(f), *et seq.* We AFFIRM the remainder of the Board's order.

## I.

This case arose out of a charge filed by the Union on October 17, 1978, and amended on November 27, 1978. The Union charge was consolidated with its objection to the October 6, 1978, election at which it was defeated 212–200. The case was heard before an Administrative Law Judge (ALJ), who issued a lengthy decision on January 22, 1981. Exceptions were taken by the Company, and on May 28, 1982, a three-member panel of the NLRB affirmed in large part the ALJ's decision. 261 N.L.R.B. 184 (1982).

All of the alleged unfair labor practices took place during the Union's organization campaign preceding the election in controversy. The ALJ sustained a number of the charges of Company misconduct, but dismissed others. The Board agreed that the Company had infringed upon its employees' rights protected by section 7 of the Act. 29 U.S.C. § 157.[2]

The NLRB general counsel and the Union contended in the administrative proceedings that the Company had intentionally interfered with its employees' section 7 rights by threatening disastrous results, including the closing of the Mena plant, if the labor force became organized. The Company replied that it was in the midst of serious financial difficulties which raised the real potential of closing the plant at Mena, not merely that it was a contrivance designed to oppose the Union. The ALJ made the following finding of fact on this issue:

> Whether the operational problems of USEM, and particularly at the Mena plant, were real or, as the General Counsel suggests, concocted as a vehicle of disguise [sic] threats to close the Mena plant, is not critical to the ultimate resolution of the complaint allegations based thereon. I am persuaded by the record evidence that USEM had problems and there was urgency to solve these problems for it to be a profitable division of Emerson. However, unchallenged record evidence also conclusively establishes that the Respondent seized upon these problems to interfere with, restrain and coerce its employees in the exercise of their Section 7 rights in violation of Section 8(a)(1) of the Act.

The ALJ's decision also discussed isolated contacts between supervisors and employees, some of which the ALJ found to have constituted coercive interrogation.

The Board adopted the decision of the ALJ with respect to the above finding.[3] The Board made the following conclusion of law:

> By interrogating its employees concerning their union membership, activities and desires; by threatening its employees directly or by implication, that it would close its Mena plant if the Union were selected as its employees' collective-bargaining representative; by threatening

---

**2.** Section 7 provides, in pertinent part, as follows:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . .

29 U.S.C. § 157.

> Under section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7]."

**3.** The Board did reject two findings, not discussed above, which held that the Company had promulgated an overly broad no-solicitation rule, and that a local newspaper had acted as the Company's agent in publishing an article and editorial unfavorable to the Union.

its employees, directly or by implication, that the selection of the Union at its Mena plant would inevitably result in strikes and violence; by threatening its employees that it would be futile for them to select the Union to represent them by telling them that it would not bargain in good faith with the Union; and by threatening its employees that they would be subject to discipline for alleged violations of its no-solicitation rule based solely upon complaints from other employees, Respondent has engaged in unfair labor practices affecting commerce within the meaning of Section 8(a)(1) and Section 2(6) and (7) of the Act.

The Board ordered the Company to cease and desist from the threats and coercion, and ordered it to post a notice stating that it would not threaten or coerce employees for participating in union activities. The Board also set aside the October 6, 1978, election and ordered a new election to be conducted at a time to be set by the Regional Director of the NLRB.

## II.

■ The Company purports to bring its petition for review in this Circuit under section 10(f) of the National Labor Relations Act, which provides, in pertinent part, as follows:

> Any person aggrieved by a final order by the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying

that the order of the Board be modified or set aside.

29 U.S.C. § 160(f).

Although the Company is clearly an "aggrieved person," the only indications in the record that the Company transacts business in this Circuit take the form of bald assertions in its petition for review and in a footnote at the beginning of its brief.[4] The Board conceded, however, that the Company has properly petitioned this Circuit for review.

Neither a petitioner nor the Board can confer jurisdiction on this Court when the record is devoid of any evidence whatsoever that the petitioner transacts business within this judicial circuit. A threshold issue in this case, therefore, is whether in fact this Circuit has the authority to review this case.

■ The United States Court of Appeals for the First Circuit recently refused to consider a petition filed by a Connecticut corporation and a New Jersey corporation for review of an NLRB cease and desist order relating to unfair labor practices which took place in Connecticut.[5] *S.L. Industries, Inc. v. NLRB,* 673 F.2d 1 (1st Cir.1982). The court found insufficient petitioner's allegations of a nexus with the First Circuit:

> In its amended jurisdictional statement and in various supporting memoranda and arguments on this issue, the petitioners allege, and we take as true, that over a period of years they have bought from and sold to various individuals and businesses located in Massachusetts, New Hampshire, and Rhode Island—all of which are located in the First Circuit. Further, S.L. maintains that one of these customers, Technical Papers Corp., of Needham, Massachusetts, has also acted

---

**4.** The statement appearing in petitioner's petition for review reads as follows: "Petitioner is engaged in business within this Judicial Circuit. Accordingly, this Court had jurisdiction over this Petition to Review pursuant to Section 10(f) of the National Labor Relations Act, as amended [29 U.S.C. § 169(f)]." (Bracketed information in original.)

A similar statement appears in footnote two of its brief: "This Court has jurisdiction over these proceedings under Section 10(f) of the Act, as the Petitioner, a person aggrieved by an Order of the Board, transacts business within this judicial circuit."

**5.** New Jersey is located in the Third Circuit; Connecticut is in the Second Circuit.

as "exclusive sales representative" for S.L. within the states comprising the First Circuit. There is, however, no evidence that Technical Papers Corp. took any action on the petitioners' behalf other than pursuing the normal course of its own business or that it was compensated for its "exclusive representation."

It is undisputed that neither S.L. nor Extruded has at any time owned or leased property or maintained an office or employees within the First Circuit. Neither corporation, apparently, is registered to do business in any state within the First Circuit. Thus, their sole contacts are the purchases and sales and the "exclusive representation" arrangement with one Massachusetts customer.

673 F.2d at 2.

In discussing its authority to hear the case, the First Circuit referred to the issue as one of "venue," although it noted that other courts had labeled the issue "jurisdictional." Dismissing the appeal for improper venue, then, the court held that if the circumstances alleged by the petitioner were sufficient to bring itself within the authority of the circuit "large corporations would be free to roam the entire country in search of venues which might provide them with what, in their opinion, would be a more favorable hearing. Congress would not have expressly provided a *limitation* on venue had it intended this result." 673 F.2d at 3.

We find in the instant case that since the Board has not challenged the statement by the Company that it transacts business within this Circuit, we may accept the assertion as true and find jurisdiction. *See McLean Trucking v. NLRB,* 689 F.2d 605, 607 (6th Cir.1982). We add, however, that a petitioner for review has an obligation to make more than an unverified statement in his pleadings properly to invoke the jurisdiction of this Court.

■ Although we find we do have *jurisdiction,* we note that *venue* of the case would have been more appropriate in another forum, and had the Board so requested, we would have transferred the case to the Eighth Circuit. In *Farah Mfg. Co. v. NLRB,* 481 F.2d 1143 (8th Cir.1973), the Eighth Circuit ordered a case transferred to the Fifth Circuit, even though it found that it had jurisdiction to review the case because the company, under a liberal construction of section 160(f), did business within the Circuit. The Eighth Circuit held:

> We believe this case properly belongs in the Fifth Circuit. That court has already passed on some controversies between and among the contending parties and is familiar with the background of this case. The disposition of this case may serve as precedent for the disposition of other controversies which remain in or may arise later in the Fifth Circuit. Farah's basis in asking this court to act rests on some business operations conducted within the geographical boundaries of this circuit but these are completely unrelated to the controversies arising between labor and management at manufacturing plants located in El Paso, Texas. Farah's filing of the petition for review in this court, although not improper, represents "forum shopping," a practice to be discouraged.

481 F.2d at 1145.

In the instant case, the Company's counsel conceded at oral argument that he had petitioned for review in this Circuit because of what he perceived as favorable law for his client. We disapprove the idea of forum shopping in conjunction with 29 U.S.C. § 160(f) appeals. Thus, while we have not exercised our authority to transfer this case, we note that such a transfer may be made by a court of appeals regardless of whether a party has moved for a change of venue, and regardless of whether a petition for review has been filed in another circuit.[6] *See Liquor Salesmen's Union Local 2 v. NLRB,* 664 F.2d 1200 (D.C.Cir.1981); *NLRB*

---

**6.** We note as well that the headquarters of Emerson Electric Company, U.S. Electrical Motors' parent corporation, is in St. Louis, Missouri, also in the Eighth Circuit.

*v. Wilder Mfg. Co.,* 454 F.2d 995 (D.C.Cir. 1971).

### III.

◼ Petitioner urges us to review the Board's order requiring a new election to be held. The well-settled law both in this Circuit and others, derived from *American Federation of Labor v. NLRB,* 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940), and its companion case, *NLRB v. International Brotherhood of Electrical Workers,* 308 U.S. 413, 60 S.Ct. 300, 84 L.Ed. 354 (1940); *see also Boire v. Greyhound Corp.,* 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), is that the direction of an election by the Board is not a "final order" within the meaning of Section 10(f), 29 U.S.C. § 160(f), and not subject to review. *American Bread Co. v. NLRB,* 411 F.2d 147 (6th Cir.1969).

Courts have uniformly held that since an order of the Board directing an election in a representation proceeding is not a "final order," it can only be challenged in the context of the Company's later refusal to bargain because of the asserted error in the Board's order. The Fifth Circuit has articulated the rule as follows:

> The Company also requests that we vacate the Board's order to hold a second election. However, an order directing an election in a representation proceeding is not a final order directly reviewable by this court under sections 10(e) and (f) of the Act. *See Federal-Mogul Corp. v. NLRB,* 566 F.2d 1245, 1249 n. 2 (5th Cir. 1978). As this court has held in a similar case:
>
>> Little need be said about the Employer's effort to have us review at this stage the order calling for a new election. . . . Ever since *American Federation of Labor v. NLRB,* 1940, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; [additional citation omitted] it has been clear that Courts of Appeals do not have the power to review representation proceedings. And jurisdiction does not come into being because the representation order arises out of a consolidated hearing as to which the Court of

Appeals has jurisdiction to review the order concerning unfair labor practices. *Hendrix Manufacturing Co. v. NLRB,* 321 F.2d 100, 106 (5th Cir.1963).

*Custom Recovery v. NLRB,* 597 F.2d 1041, 1046 (5th Cir.1979). *See also NLRB v. Intertherm, Inc.,* 596 F.2d 267 (8th Cir.1979).

Professor Gorman in his *Basic Text on Labor Law* writes as follows:

> Board decisions in representation cases, both before and after the holding of the election, are (absent unusual circumstances) not directly reviewable by the court. *AFL v. NLRB,* (U.S.1940). This includes determination of the Board's jurisdiction, the appropriate bargaining unit, the eligibility of voters, the validity of the election and the certification of the results. These can be judicially reviewed only as an incident to the review of a "final order" of the Board in an unfair labor practice proceeding. Thus, an employer wishing to secure judicial review of a Board determination on any or all of the matters will refuse to bargain with the certified union and will seek to have the Board's unfair labor practice order (under Section 8(a)(5)) set aside because of error in the representation proceeding.

R. Gorman, *supra,* at 49.

The "final order" rule seems to be well settled, *see Raley's Inc. v. NLRB,* 703 F.2d 410, 416 n. 3 (9th Cir.1983), and parties seem rarely to have challenged it. One Third Circuit judge in a recent dissent approved treating an NLRB order setting aside an election as a final order, reasoning that there is no logic to permitting the Board to require a new election once a court has found insufficient evidence to support the unfair labor practices which are asserted by the Board as the basis of the election. *Graham Architectural Products Corp. v. NLRB,* 697 F.2d 534, 543 (3d Cir.1983) (Garth, J., dissenting).

Congress has vested in the Board great discretion in overseeing labor relations, and the courts have the authority to review its actions only in specifically defined instances. If election orders were immediately reviewable, parties could effectively add

greater delay to an already lengthy process of administrative hearings and appeals. Accordingly, we agree with the great weight of authority that the Board's order directing a new election is not a final order.

We therefore hold that the final order rule precludes us from reviewing the Board's order of a new election in the instant case. Although this Court permitted a one-time exception to that rule in *Maremont Corp. v. NLRB,* 666 F.2d 1037 (6th Cir.1981),[7] that case did not recite any legal authority or espouse any reasoning in support of its decision.

IV.

■ We now examine whether the findings by the Board that the Company violated § 8(a)(1) of the Act is supported by substantial evidence. The Company maintains on appeal, as it did before the Board, that Company officials only discussed the financial liability of the Company, as well as other factors, in response to employee inquiries. The evidence in the record, however, reveals that there was substantial evidence to support the Board's findings. We note especially the conduct of the Mena plant manager, Jim Montgomery, who met with employees in groups of 30 when they were summoned to a conference room by him and Industrial Relations Manager Robert Partain. At those sessions, the two managers addressed the employees concerning the Union and the forthcoming election. The circumstances, as accurately described by the ALJ, make clear that any impression by the employees that the plant might close, or that there might be a strike and/or violence if the Union were voted in, was not an unintended inference, but rather a direct implication of the actions of the Company officials:

> Displayed around the room were numerous posters, newspaper clippings and pictures dealing with strikes, violence and plant closures, particularly the closing of a plant in Shelbyville, Tennessee. While

the record is not clear, it appeared that at each of these meetings, Montgomery's opening remarks were to the effect that he could be spending his time better trying to solve the plant's problems and keep it open, but that it was necessary for him to talk about the union. He told them if the Union came in, he would have to divide his time between preparing for negotiations and solving their problems to keep the plant open. He and/or Partain alluded to the posters and newspaper clippings and stated that of the 18 Emerson plants that had been closed, 13 were Union. There was a poster outlining the length of strikes by I.A.M. at Emerson plants and Montgomery told them that I.A.M. had to strike for every contract that it had gotten at Emerson's plants. In at least one meeting, in response to an employees [sic] question as to whether the plant would close if the Union came in, Montgomery said the "question in Mena was not union or no union but plant or no plant."

(Footnotes omitted.)

Also found to have been a violation of § 8(a)(1) of the Act was the address by the President of U.S. Electrical Motors, Russ Hale, to all employees on October 4, 1978. Witnesses testified that Hale said that "it was a bad time for the I.A.M. to try to organize the Mena plant; that he had enjoyed coming to Mena and meeting the people, but if he had to make the decision to close the plant, he would make it." The ALJ and the Board therefore had evidence to support a conclusion that these meetings were threatening and coercive in nature. Although other isolated incidents mentioned were of less significance, we are satisfied that both the ALJ and the Board have examined the record closely and have made findings consistent with the evidence, to which this Court should defer, even if it may not have reached the same conclusions on that same evidence.

---

**7.** Since the two circuit judges on the panel in *Maremont* have also served on the panel in the instant case, we have deemed it appropriate to

reconsider its holding, for the reasons herein indicated.

Accordingly, the Board's petition for enforcement of its order is hereby GRANTED, the Company's petition is hereby DENIED, and the appeal of that part of the order setting aside the election and ordering a new election is hereby DISMISSED for lack of jurisdiction.