*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

BRENTWOOD AT HOBART,
       *Petitioner/Cross-Respondent,*

    *v.*

NATIONAL LABOR RELATIONS BOARD,
       *Respondent/Cross-Petitioner.*

Nos. 10-2141/2209

On Petition for Review and Cross-Petition for Enforcement
of an Order of the National Labor Relations Board.
No. 13-CA-46045.

Decided and Filed:  April 2, 2012

Before:  MOORE, SUTTON and DONALD, Circuit Judges.

————————————

## COUNSEL

**ON BRIEF:**  David K. Montgomery, JACKSON LEWIS LLP, Cincinnati, Ohio, Michael J. Passarella, JACKSON LEWIS LLP, Stamford, Connecticut, for Petitioner. Linda Dreeben, Usha Dheenan, Gregory Lauro, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent.

————————————

## OPINION

————————————

SUTTON, Circuit Judge.  Employees of Brentwood at Hobart, an assisted-living facility in Hobart, Indiana, selected the Service Employees International Union as their collective-bargaining representative.  Claiming that the union engaged in misconduct during the representation election, Brentwood challenges an order of the National Labor Relations Board requiring it to bargain with the union.  After wrestling with an initial debate over venue, we deny Brentwood's petition and grant the Board's cross-petition to enforce the order.

1

I.

In August 2009, the union tried to organize the employees of Brentwood's Indiana facility.  After it filed a representation petition, the Board scheduled an election at Brentwood for September 25, 2009.  Brentwood employees voted in favor of the union by a wide margin—twenty-eight in favor and twelve against.

Brentwood objected to the election results a week later, claiming the union improperly distributed a flyer on September 18 that included photographs of twenty-six Brentwood employees without their consent.  Using employees' photographs in union election materials without consent, the Board has held, may taint an election by conveying the false impression that the employees support the union.  *See Allegheny Ludlum Corp.*, 333 NLRB 734, 738 (2001).  After an initial investigation, the Board's regional director ordered a hearing on the objections.

At the hearing, Brentwood tried to introduce a second flyer that the union distributed on August 14 and that also purported to contain photographs of unconsenting employees.  The union's attorney objected to the admission of the August 14 flyer on relevance grounds because Brentwood had not mentioned the flyer in its objection.  The hearing officer excluded it.  A few weeks later, the hearing officer issued a written decision rejecting all of Brentwood's objections.  She found no problem with the September 18 flyer because "the employees whose photographs appeared in the flyer . . . were told what the picture[s were] for and gave their respective verbal and, in most cases, written consent." App'x 69.  Appealing to the Board, Brentwood argued that the hearing officer erred by excluding the August 14 flyer.  The Board disagreed, explaining that because Brentwood's written objection "expressly alleged that the September 18 flyer was objectionable, the August 14 flyer is not reasonably encompassed within the scope of that objection," and therefore the hearing officer "lack[ed] authority" to consider it.  App'x 81.  The Board certified the union as the exclusive collective-bargaining representative of Brentwood's employees.

Brentwood refused to recognize or bargain with the union, insisting its conduct had tainted the election.  The union charged Brentwood with violating the National

Labor Relations Act.  *See* 29 U.S.C. § 158(a)(5).  The Board agreed.  *Brentwood Assisted Living Cmty.*, 355 NLRB No. 149, at *3 (Aug. 27, 2010).  Brentwood filed a petition in our court challenging the Board's order, and the Board filed a cross-petition to enforce it.  *See* 29 U.S.C. §§ 160(e), (f).

II.

The reader may wonder why a dispute over a union election in Indiana belongs in the Sixth Circuit (covering Kentucky, Michigan, Ohio and Tennessee) as opposed to the Seventh (covering Illinois, Indiana and Wisconsin).  We wondered the same thing.

Under the National Labor Relations Act, a company "aggrieved" by an order of the Board may obtain review in any federal court of appeals where "the unfair labor practice in question" occurred (the Seventh Circuit), in any court of appeals where the company "resides or transacts business" (the Seventh Circuit and possibly the Sixth) or in the D.C. Circuit (not the Seventh or the Sixth).  29 U.S.C. § 160(f).  The Board likewise may file a petition to enforce one of its orders in any court of appeals where "the unfair labor practice in question occurred" or where the company subject to the order "resides or transacts business."  29 U.S.C. § 160(e).  (The latter provision says nothing about the D.C. Circuit.)

Neither Brentwood nor the Board challenges our authority to review their petitions.  That concession matters so long as the requirements of §§ 160(e) and (f) spell out limitations on venue, as opposed to limitations on subject-matter jurisdiction.  *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006).

Subject-matter jurisdiction defines a court's "power to adjudicate," while venue specifies "where judicial authority may be exercised" based on "convenience" to the "litigants." *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167–68 (1939). The former asks "whether"—whether "the Legislature [has] empowered the court to hear cases of a certain genre?"  The latter asks "where"—where should certain kinds of cases proceed? *Wachovia Bank*, 546 U.S. at 316.

The requirements of §§ 160(e) and (f) go to venue, not subject-matter jurisdiction. As geographic limitations, they ask the "where"—the venue—"question." *Wachovia Bank*, 546 U.S. at 316. And the answer they give turns on classic venue concerns—"choosing a convenient forum." *Id.* By generally permitting the action to proceed in the circuit where "the unfair labor practice in question" occurred or where the company "resides or transacts business," §§ 160(e), (f), the provisions ensure that the company will not be forced to defend an action in a faraway circuit. Even the one exception to these general considerations confirms the statute's focus on convenience. The company also may choose to file a petition for review in the D.C. Circuit, the Board's home turf, § 160(f), but it is *only* the company that may invoke the exception. The Board may not file a petition for enforcement in the D.C. Circuit, unless that is where the unfair labor practice took place or where the company resides or transacts business. § 160(e); *cf. Fed. Labor Relations Auth. v. Soc. Sec. Admin.*, 846 F.2d 1475, 1478 (D.C. Cir. 1988).

In considering similar litigation-channeling provisions, the Supreme Court has uniformly treated them as venue, not jurisdictional, limitations. Most on point is *Panhandle Eastern Pipe Line Co. v. Federal Power Commission*, 324 U.S. 635 (1945), where the Court considered the judicial-review provision of the Natural Gas Act. Like the National Labor Relations Act, the Natural Gas Act allows a company "aggrieved by an order issued by the [Federal Power] Commission [to] obtain a review of such order in the circuit court of appeals . . . for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the [D.C. Circuit]." Pub. L. No. 75-688, § 19(b), 52 Stat. 821, 831 (1938) (codified as amended at 15 U.S.C. § 717r(b)). After the Eighth Circuit affirmed the Commission's order, an intervening party argued that the court lacked jurisdiction because the company did not have its principal place of business within the circuit. *Panhandle E. Pipe Line*, 324 U.S. at 638. The Court resisted, holding that this geographic limitation "relates to the convenience of the litigants" and thus "goes to venue not to jurisdiction." *Id.* at 638–39. The Court came to a similar conclusion in reviewing similar provisions in other statutes. *See Henderson v. United States*, 517 U.S. 654, 666 (1996) (Suits in Admiralty Act);

*Citizens & Southern Nat'l Bank v. Bougas*, 434 U.S. 35, 35–38 (1977) (National Bank Act); *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 124–25 (1974) (Miller Act).

The Court's recent effort to bring "discipline to the use of the term 'jurisdictional,'" *Gonzalez v. Thaler*, 565 U.S. ___, 132 S. Ct. 641, 648 (2012), reinforces this conclusion. Under the new regime, the Court will treat "threshold limitations on a statute's scope . . . as jurisdictional" only if Congress "clearly" says so. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006). Judged by this "readily administrable bright[-]line" rule, *id.*, the geographic limitations in §§ 160(e) and (f) fall on the non-jurisdictional side of the line. The relevant parts of §§ 160(e) and (f) do not speak in classic "jurisdictional terms." *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982). While "jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994), these laws speak to the authority of the parties to seek relief in the courts. The provisions say that "[t]he Board *shall have power* to petition," and an "aggrieved" company "*may obtain a review* of [the Board's] order in," any court of appeals meeting the geographic requirements. 29 U.S.C. §§ 160(e), (f). Nothing in either provision indicates that Congress meant to attach jurisdictional consequences to these geographic strictures.

*Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594 (2011), brings the point home. The Bankruptcy Code says that "personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose." 28 U.S.C. § 157(b)(5). Invoking this provision, the *Stern* defendant argued that the bankruptcy court lacked jurisdiction over his defamation claim and the plaintiff's counterclaim. 131 S. Ct. at 2606. Not so, the Court held. Applying the *Arbaugh* clear-statement rule, it reasoned that § 157(b)(5) is not "a jurisdictional decree" but "simply specifies where a particular category of cases should be tried." *Id.* at 2607. Because the defendant did not raise an objection before the bankruptcy court, he consented to that court's resolution of his claim and the plaintiff's

counterclaim. *Id*. at 2608. Much like these provisions of the Bankruptcy Code, the geographic limitations in §§ 160(e) and (f) "specif[y] where a particular category of cases" should be resolved, not whether they may be resolved, and as such they are not jurisdictional in scope. *Id*. at 2607.

That §§ 160(e) and (f) use the word "jurisdiction"—saying that the court "shall have jurisdiction of the proceeding" after the petition is filed and "the jurisdiction of the court shall be exclusive" after the administrative record is filed—does not change things. 29 U.S.C. § 160(e); *see* § 160(f). No doubt, the term "jurisdiction" often will be a straightforward indicator that Congress meant "a statutory limitation on coverage" to be "jurisdictional." *Arbaugh*, 546 U.S. at 502; *see, e.g.*, *Stern*, 131 S. Ct. at 2607; *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. ___, 131 S. Ct. 1197, 1204 (2011). That is particularly so when the debate concerns the difference between jurisdictional and claim-processing rules. But the same is not true in a venue/jurisdiction debate. There is nothing unusual in that setting about having provisions that go to jurisdiction *and* venue in the same subsection, which is all that happened here. After using §§ 160(e) and (f) to spell out which circuit courts the parties should petition for review or enforcement, Congress used the provisions to establish that, once the petition and the administrative record are filed, that court's jurisdiction is exclusive.

Nor is it unusual for Congress to answer the "where" and "whether" questions in agency-review provisions in a like manner, setting forth venue and jurisdictional requirements in the same subsection. *See, e.g.*, 7 U.S.C. § 136n(b) (Federal Insecticide, Fungicide, and Rodenticide Act); 12 U.S.C. § 1467a(j) (Home Owners' Loan Act); 12 U.S.C. § 5563(b)(4) (Consumer Financial Protection Act); 29 U.S.C. § 660(a) (Occupational Safety and Health Act). One such provision is § 19(b) of the Natural Gas Act, which directs aggrieved parties to file petitions for review in the circuit where the "natural-gas company to which the order relates is located or has its principal place of business." 15 U.S.C. § 717r(b). When the Court considered the provision in *Panhandle Eastern Pipe Line* in 1945, the statute said that "[u]pon the filing of [the] transcript [the] court shall have exclusive jurisdiction." 52 Stat. at 831. Despite this jurisdictional

language, the Court held that the geographic limitation on which court a natural-gas company could petition for review "goes to venue not to jurisdiction." *Panhandle E. Pipe Line*, 324 U.S. at 638. What was true for the Natural Gas Act remains true for the National Labor Relations Act. These provisions concern venue, not jurisdiction, and no "clear evidence" shows otherwise. *Henderson*, 131 S. Ct. at 1204.

Nearly thirty years ago, it is true, we briefly referred to the geographic limitations in §§ 160(e) and (f) in jurisdictional terms, saying that "[n]either a petitioner nor the Board can confer jurisdiction on this Court when the record is devoid of any evidence whatsoever that the petitioner transacts business within this judicial circuit." *U.S. Elec. Motors v. NLRB*, 722 F.2d 315, 318 (6th Cir. 1983). But that was in the pre-*Arbaugh* days when the courts (ours included) were "less than meticulous" about using the term "jurisdiction." *Gonzalez*, 132 S. Ct. at 648; *see Pruidze v. Holder*, 632 F.3d 234, 238 (6th Cir. 2011). Under *Arbaugh*, to say nothing of the Supreme Court's venue/jurisdiction decisions, the geographic limitations in §§ 160(e) and (f) are not jurisdictional. Other circuits have come to the same conclusion, before *Arbaugh* and since. *See S.L. Indus., Inc. v. NLRB*, 673 F.2d 1, 2 n.1 (1st Cir. 1982); *NLRB v. Wilder Mfg. Co.*, 454 F.2d 995, 998 n.12 (D.C. Cir. 1972); *see also NLRB v. Goya Foods of Fl.*, 525 F.3d 1117, 1129 n.16 (11th Cir. 2008) (assuming without explanation that limitations relate to venue); *Davlan Eng'g Inc. v. NLRB*, 718 F.2d 102, 103 (4th Cir. 1983) (same).

That leaves one other consideration. Even though the geographic limitations in §§ 160(e) and (f) relate to venue and not jurisdiction, and even though Brentwood and the Board agree that venue is proper in this circuit, we retain discretion to transfer this case to a more appropriate venue, such as the Seventh Circuit. *U.S. Elec. Motors*, 722 F.2d at 319. We see no reason to exercise this discretion, as the dispute has ample connections to the Sixth Circuit. The company that owns and operates Brentwood, Emeritus Corporation, also operates assisted-living facilities in this circuit and therefore "transacts business" here. *See* NLRB Ltr. Br. of Feb. 27, 2012; Brentwood Ltr. Br. of Feb. 29, 2012. Nor does *Pepsico, Inc. v. NLRB*, 382 F.2d 265 (6th Cir. 1967), preclude

us from considering Emeritus's connections to the circuit. In that case, we dismissed a petition filed by Pepsico challenging a Board order concerning one of its wholly owned subsidiaries in New York. Although Pepsico undoubtedly transacted business within the circuit, we held that it was not "aggrieved," as that term is used in § 160(f), because it "was not a party to the proceeding before the Board" and the Board's decision did not require it to do anything. *Id*. at 266. Here, in contrast, Emeritus is directly involved in Brentwood's operations: It leases the building, employs all the workers, holds all the required licenses and receives all of the revenue from Brentwood. Unless vacated, the Board's order will force Emeritus itself to take action, making it "aggrieved" within the meaning of § 160(f).

III.

Brentwood urges us to set aside the Board's order on one ground—that the hearing officer improperly excluded the August 14 flyer. This decision receives abuse-of-discretion review. *Kentucky River Cmty. Care, Inc. v. NLRB*, 193 F.3d 444, 452 (6th Cir. 1999). No such error occurred, as the order complied with the Board's hearing rules concerning objections to union representation elections.

A party challenging the results of an election must file written objections that "contain a short statement of the reasons therefor." 29 C.F.R. § 102.69(a). A regional director of the Board conducts an initial investigation and resolves the objections on his own or, if the objections raise "substantial and material factual issues," orders a hearing on them. 29 C.F.R. § 102.69(d). If the regional director orders a hearing on the objections, the hearing officer may resolve only those objections and only those matters "sufficiently related" to them. *Precision Prods. Group, Inc.*, 319 NLRB 640, 641 n.3 (1995).

Brentwood's written objection stated: "During the critical period, specifically on September 18, 2009, [the union] distributed a flyer [that] included the photographs of twenty-six unit employees. The use of the unit employees' photographs was without their prior knowledge and/or consent." App'x 32. On this record, as the Board concluded, the hearing officer permissibly excluded the August 14 flyer because it was

not "reasonably encompassed within the scope of [Brentwood's written] objection." App'x 81.

Brentwood counters that, although its objection mentions only the September 18 flyer, the first four words of the objection—"[d]uring the critical period"—reasonably encompass any other flyers that the union distributed leading up to the election. That may be a plausible reading of the objection, we suppose, but the Board's reading of it is surely the more natural one. The prefatory language explains why the September 18 flyer is objectionable. If the union had not distributed it "[d]uring the critical period"—during the lead-up to the election—it could not have improperly swayed the voting employees. The objection gives no hint that Brentwood had a problem with other flyers. If a plaintiff files a lawsuit claiming that, "during my vacation in Florida, specifically on February 18, defendant struck me with his car," a court would be well within its discretion to exclude evidence that the same defendant also hit the plaintiff with his car on January 14. The hearing officer likewise did not abuse her discretion in excluding the August 14 flyer.

Brentwood insists that the hearing officer failed to comply with other evidentiary rulings by the Board. In *Fiber Industries*, 267 NLRB 840 (1983), it points out, the union's written objections identified certain pieces of campaign literature, but the Board affirmed the hearing officer's consideration of other pieces of literature because they were "sufficiently related" to the union's objection. *Id*. at 840 n.2. And in *Hollingsworth Management Service*, 342 NLRB 556 (2004), the Board affirmed the hearing officer's consideration of electioneering by some third parties even though the union's written objection referred only to "electioneering by the union, its officers, agents and representatives." *Id*. at 557 n.3.

Brentwood has a point. Today's evidentiary ruling is not entirely consistent with these earlier rulings by other hearing officers. But, as we explained in *Conley v. NLRB*, 520 F.3d 629, 639 (6th Cir. 2008), this kind of inconsistency by itself does not justify vacating the Board's order. In *Conley*, the employer tried to demonstrate that the Board's hearsay ruling was inconsistent with prior cases in which hearing officers had

excluded similar evidence, but we found that effort to be "of little import." *Id*. at 640. "[T]he more germane inquiry," we explained, was whether the evidentiary ruling "was reasonable under the circumstances and limited . . . to the practicalities of the situation." *Id*. at 640–41. It was, we held. *Id*. The same is true here. Had the Board admitted the flyer, that might well have blindsided the union, which had every reason to prepare to defend only the flyer identified in the objection. *See Factor Sales, Inc.*, 347 NLRB 747, 747–48 (2006)*; FleetBoston Pavilion*, 333 NLRB 655, 657 (2001).

Pressing the point, Brentwood claims that excluding the August 14 flyer was "akin to denying [it] an evidentiary hearing at all." Br. at 26. This might come as a surprise to the Board's hearing officer, who heard from seventeen different witnesses during a hearing that spans 274 pages of transcript. And it might come as a surprise to Brentwood's attorney, who responded to this (allegedly) grievous decision by saying, "That's fine." App'x 399. Brentwood received a full hearing on the objections it submitted, and the hearing officer's exclusion of evidence that she reasonably viewed as beyond the scope of the written objections does not amount to a denial of a hearing altogether.

Brentwood also argues that the Board's rule prohibiting hearing officers from expanding hearings beyond matters that are reasonably encompassed by the written objections violates due process. But the Board, like all administrative agencies, has broad authority to fashion its own procedures for developing the evidence on which it bases its decisions. *See Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 543–45 (1978). The Board's limitation on the authority of hearing officers fits comfortably within that broad authority. In the end, Brentwood overlooks a simple reality: All it had to do to allow inquiry into the August 14 flyer was to mention the flyer in its written objections. Brentwood's failure to do so does not create a due process claim in Brentwood's favor.

IV.

For these reasons, we deny Brentwood's petition for review, and we grant the Board's cross-petition to enforce its order.