RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0219p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

STYLA Y. CARTER,

*Plaintiff-Appellant*,

EDWARD L. GILBERT,

*Appellant*,

> No. 17-4199

*v.*

HICKORY HEALTHCARE INC.; HICKORY RIDGE NURSING
AND REHABILITATION CENTER,

*Defendants-Appellees*.

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:14-cv-02691; Kathleen B. Burke, Magistrate Judge; Sara E. Lioi, District Judge.

Decided and Filed: September 27, 2018

Before: SUTTON, McKEAGUE, and KETHLEDGE, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:** Edward L. Gilbert, EDWARD L. GILBERT CO., LPA, Akron, Ohio, for Appellants. Scott Salsbury, Laura Kramer Rubadue, SALSBURY & SALSBURY, LPA, Hudson, Ohio, for Appellee Hickory Healthcare, Inc.

───────────────

**OPINION**

───────────────

SUTTON, Circuit Judge. After Hickory Healthcare fired Styla Carter from her job as a nursing assistant, she sued the company for discrimination. The district court ruled that she had

filed her lawsuit too late and could not proceed.  It then sanctioned her lawyer, Edward Gilbert, because he had advanced a claim that was clearly time barred.  Because the district court did not abuse its discretion in imposing sanctions, we affirm.

I.

Styla Carter has asthma and cannot be around cigarette smoke.  When she began working for Hickory Healthcare, the nursing home took note of her medical condition and exempted her from monitoring patients' smoke breaks.  In July 2007, a new supervisor changed course and told Carter to work the smoke breaks. Carter refused, and Hickory fired her for insubordination.

That same month, Carter filed an unlawful discrimination claim with the Ohio Civil Rights Commission.  The state agency informed Carter that it had filed a parallel charge with its federal counterpart, the Equal Employment Opportunity Commission, under the Americans with Disabilities Act.   The state agency told Carter that, "[w]hen one agency completes its investigation, it will share the information it has gathered with the other agency.  When the case is resolved, it will be considered closed with both" agencies.  R. 103-2 at 5.

For the next six years, the complaint inched its way through the state system.   In November 2013, the Ohio Commission ruled for Carter, ordering Hickory to reinstate her and to pay her lost wages.  Soon after, Carter asked the federal agency for a right-to-sue letter.  Because Carter had moved to a new location without notifying the federal agency, it mailed the right-to-sue letter to her old address.  Over the next few months, Carter's attorney, Edward Gilbert, contacted the federal agency, learned that the letter had been sent to her old address, and in November 2014 procured a copy of the letter dated February 20, 2014.  Carter filed her lawsuit in federal district court on December 9, 2014.

The court concluded that Carter's claim was time barred because she filed her lawsuit more than 90 days after the date on her right-to-sue letter.  The court also granted Hickory Healthcare's motion to sanction Gilbert for "unreasonably and vexatiously" maintaining Carter's "clearly time-barred action."  R. 130 at 3; *see* 28 U.S.C. § 1927.

Gilbert appealed.  We dismissed the appeal because the sanctions order was not yet final. No. 16-4233, 2017 WL 5185358 (6th Cir. Jan. 6, 2017).

On remand, the court entered a final sanctions order in the amount of $25,995.32.

II.

Before considering the merits, we must check our jurisdiction to hear this case.

That digression requires a bit more background about the interaction between the district court judge's and magistrate judge's rulings.  After the district court granted Hickory's motion for sanctions, it referred the matter to a magistrate judge to compute the amount.  The magistrate judge determined that Gilbert should pay $25,995.32.  Instead of reviewing the magistrate's computation with fresh eyes, the district court judge reviewed the decision for clear error.  That was a misstep—though one that neither party raised in front of the district court.

The Federal Magistrates Act tells magistrate judges which matters they can hear on their own and which ones they cannot—and what kind of review the former receive from the district court.  Among other actions, the Act empowers magistrates "to hear and determine any pretrial matter" subject to clear error review by the district court judge.  28 U.S.C. § 636(b)(1)(A).  The statute provides a non-exhaustive list of exceptions that require closer review by the district court, including motions to dismiss for failure to state a claim, for an injunction, or for summary judgment.  *Id*.  Because these matters are "dispositive of a claim or defense," the magistrate writes a report and recommendation, which the district court judge reviews de novo.  Fed. R. Civ. P. 72(b)(1); *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 514–15 (6th Cir. 2001).

Another provision, § 636(b)(3), provides a catchall grant of authority:  The district court may assign a magistrate "such additional duties as are not inconsistent with the Constitution and laws of the United States."  To determine the standard of review the district court applies in these situations, we compare the matter to the matters listed in § 636(b)(1).  *See* 12 Charles A. Wright et al., *Federal Practice and Procedure* § 3068.2 (2d ed. 2018).  If the matter disposes of a claim, it gets a fresh look.  If the matter is not dispositive, it gets a deferential gaze.

Sanctions under 28 U.S.C. § 1927 count as dispositive matters, requiring fresh review. Such sanctions constitute a claim against an opposing attorney and result in a final, appealable judgment. Just as we treat Rule 11 sanctions as dispositive for that reason, *see Bennett v. Gen. Caster Serv. of N. Gordon Co.*, 976 F.2d 995, 998 (6th Cir. 1992) (per curiam), we should treat § 1927 sanctions as dispositive for that reason. The Federal Rules of Civil Procedure bolster this conclusion. Rule 54(d)(2)(D) allows the court to "refer a motion for attorney's fees to a magistrate judge . . . as if it were a dispositive pretrial matter," offering another example of a fee-and-cost sanction that receives fresh review by the district court.

All of this means that the district court should not have reviewed the magistrate's sanctions award for clear error.

But what does that mistake have to do with our appellate jurisdiction? Nothing, one might have thought. Except that one of our decisions issued a quarter century ago construed the Magistrates Act to mean that an error by the district court in applying the standard of review to a magistrate judge's decision deprived the *court of appeals* of appellate jurisdiction. *Massey v. City of Ferndale*, 7 F.3d 506, 508–11 (6th Cir. 1993).

Time has not been kind to *Massey*. Since then, case after case has clarified the nature of jurisdictional limits—a set of clarifications that leaves no room for the *Massey* approach.

Starting with *Arbaugh v. Y&H Corp.* and in many cases since, the U.S. Supreme Court has drawn a helpful line between mandatory jurisdictional requirements and mandatory procedural rules. 546 U.S. 500 (2006). The distinction matters. Parties may not waive or forfeit jurisdictional objections. But they may waive or forfeit non-jurisdictional objections. *Id.* at 514. Attempting to bring clarity to the area, the Court has said that a mandatory procedure does not divest a court of jurisdiction unless Congress gives a "clear indication" that it "wanted the rule to be jurisdictional." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 436 (2011) (quotation omitted).

That approach shows that neither the Magistrates Act nor any other statute precludes us from hearing this appeal. Congress empowered us to review final orders of district courts. *See* 28 U.S.C. § 1291. The district court entered a final order. And we thus may review it.

It makes no difference that the court issued that order after examining the magistrate's computations too deferentially. No part of the Magistrates Act says, or even hints, that the standard of review procedure—or more precisely the failure to adhere to it—creates a jurisdictional impediment to review in the court of appeals. *See Shinseki*, 562 U.S. at 436. No such jurisdiction-limiting language appears in that part of the statute. And it is no surprise that, when the D.C. Circuit recently contemplated what to do when a district court reviews sanctions under the wrong standard, its opinion did not speak in jurisdictional terms. *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939 (D.C. Cir. 2017); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (holding that parties can forfeit or waive "their right to argue for de novo review").

As fortune would have it, *Massey* was announced before *Arbaugh* and before the U.S. Supreme Court tightened the screws on jurisdictional limits and told courts to accord "no precedential effect" to "drive-by jurisdictional rulings." *Arbaugh*, 546 U.S. at 511 (quotation omitted). That is not the first time this has happened in our court. *See, e.g.*, *Brentwood at Hobart v. NLRB*, 675 F.3d 999, 1004 (6th Cir. 2012); *Hoogerheide v. IRS*, 637 F.3d 634, 636 (6th Cir. 2011). Just as we corrected those drive-by jurisdictional rulings, we must correct *Massey*.

Because the standard of review requirement creates a mandatory, but not a jurisdictional, rule, the parties may forfeit (or waive) it. That's what happened here. Neither Gilbert nor Hickory pointed out that the district court used the incorrect standard of review, not in the lower court and not in their briefs on appeal. That amounts to a forfeiture.

### III.

Turning to the merits, a judge may impose sanctions under § 1927 when a lawyer objectively "falls short of the obligations owed by a member of the bar to the court." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (quotation omitted). The lawyer need not have "subjective bad faith" but must act with "something more than negligence or incompetence." *Id.* A court may impose the sanction if an attorney "abuses the judicial process or knowingly disregards the risk" that he will needlessly multiply the

proceedings.  *Id.*  Maintaining a clearly time-barred lawsuit constitutes a classic example of conduct that warrants a sanction.  *See, e.g.*, *Davis v. Bowron*, 30 F. App'x 373, 376 (6th Cir. 2002).

Carter's claim against Hickory Healthcare expired long before Gilbert filed this lawsuit. A plaintiff who wants to sue under the Americans with Disabilities Act must do so "within ninety days" after the Equal Employment Opportunity Commission notifies the plaintiff via a right-to-sue letter that the Commission will not pursue action against the employer.  42 U.S.C. § 2000e-5(f)(1); *see id.* § 12117(a) (applying § 2000e-5 to the Americans with Disabilities Act). The clock begins to run "on the fifth day" after the Commission mails the letter to the plaintiff's address.  *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000).  A claimant must inform the Commission of any change in her address.  *See* 29 C.F.R. § 1601.7(b).

Carter's right-to-sue letter carries the date of February 20, 2014.  That gave Gilbert until May 26, 2014, to initiate her lawsuit.  But he filed her complaint on December 9, 2014, almost 200 days late, and maintained the lawsuit all the way through summary judgment.  Before moving for summary judgment and sanctions, the defendants informed Gilbert of the statute of limitations and provided him with case law definitively barring Carter's claim.  Carter pressed on anyway.  On this record, the court did not abuse its discretion in awarding sanctions.  *See Red Carpet Studios*, 465 F.3d at 644.

Gilbert raises several counterarguments, all unconvincing.  He first maintains that he reasonably believed Carter could qualify for equitable tolling.  But these arguments were leaky at best, frivolous at worst.  That a regulation required the Commission to send *some* types of attorneys a copy of the right-to-sue letter does not justify equitable tolling.  The regulation applies only to public sector claims, not private sector ones like Carter's.  *See* 29 C.F.R. §§ 1614.103(b), 1614.605(d).  It thus is not true that "a failure by the EEOC to copy counsel on a right-to-sue letter prevents the ninety-day period from running."  *Ball v. Abbott Advert., Inc.*, 864 F.2d 419, 421 (6th Cir. 1988).

Gilbert thought that Carter could rely on the assumption that the Ohio agency (which she told about her new address) would inform its federal counterpart about her move. Precedent says otherwise. *See id.* Nor did either commission mislead Carter into thinking that she did not need to update the federal agency about her address change. True, the two agencies told Carter about their cooperation agreement, perhaps making her mistake an honest one. But that doesn't qualify as misleading. The relevant regulations still required Carter to "provide the Commission with notice of any change in address." 29 C.F.R. § 1601.7(b).

In the district court, Gilbert argued that Carter had a shot at escaping the statute of limitations because "courts determine equitable tolling on a case-by-case basis." R. 114-6. Yes, that's so. But that does not license courts to toll a statute whenever they please. They must "draw upon decisions made in other similar cases for guidance"—the principle that undermines Carter's case. *Holland v. Florida*, 560 U.S. 631, 650 (2010).

Gilbert adds that the district court erred when it sanctioned him punitively. But these sanctions are meant to be "punitive." *Red Carpet Studios*, 465 F.3d at 647.

Nor does it matter that Hickory Healthcare failed to file a motion to dismiss and instead waited until summary judgment to raise the statute of limitations. True, the party seeking sanctions under § 1927 must mitigate damages. *See Riddle v. Egensperger*, 266 F.3d 542, 555 (6th Cir. 2001). But the defendants did just that. They contacted Gilbert and informed him of the flaws in his case. The court awarded fees and costs incurred only after that time.

Gilbert claims that the judge erred by not requiring all of the defense attorneys to submit individual affidavits attesting to their time billed. Not true. One affidavit from the lead attorney attesting to their collective time suffices. Carter likewise claims that attorneys must prove the reasonableness of their proposed rates with expert testimony. But the decision on which he relies says no such thing; it says that the court may look to a variety of sources to determine a rate's reasonableness. *See Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016). Expert testimony may help in some cases but is not required in all of them.

Gilbert concludes with a grab bag of objections to the court's calculations. None of the alleged errors sinks to an abuse of discretion. For example, it does not matter that defense

counsel did not submit a retainer agreement proving that they would have charged these rates and this number of hours.  When calculating attorney's fees, courts often look to the prevailing market rates, not necessarily to the actual expenses a client incurs.  *See Johnson v. City of Clarksville*, 256 F. App'x 782, 784 (6th Cir. 2007).  Nor did the magistrate improperly include block billing in the fee award.  The judge fairly concluded that the entries contained enough detail to avoid that pitfall.

Gilbert claims that the magistrate erred in reducing the fee award by just 1% to account for clerical tasks that lawyers performed, insisting that the magistrate should have conducted a line-by-line approach to identify each instance of non-legal work.  But we have long permitted the "arbitrary but essentially fair approach of simply deducting a small percentage of the total hours."  *Northcross v. Bd. of Educ. of Memphis City Schs.*, 611 F.2d 624, 636–37 (6th Cir. 1979). "Trial courts need not, and indeed should not, become green-eyeshade accountants."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).  They "do rough justice, not . . . auditing perfection."  *Id.*

Gilbert maintains that the magistrate should have reduced the award by more than 30% to account for defense counsel's excessive billing.  But if abuse of discretion review means anything, it must mean that we cannot readjust this type of judgment call absent a good explanation.  Gilbert provides none.  He likewise provides no evidence to support his claim that defense counsel received payment for unnecessary and duplicative work.

Gilbert maintains that he should not have to pay for time the defendants spent drafting a Rule 11 motion that the court denied.  But the magistrate reduced the award for just that reason. The targeted entries seem to relate to *both* Rule 11 sanctions and other types of sanctions, including the § 1927 sanctions that the defendants ultimately won.

We affirm.